IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Christian Littrell, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 CV 50011 |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| Erik Gulbrantson, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion for summary judgment [74] is granted in part and denied in part. Defendants' motion for summary judgment as to all of plaintiff's claims regarding the incident in the church parking lot against defendants Gulbrantson and Anderson is granted. Defendants' motion for summary judgment as to plaintiff's claims for excessive force and battery against defendant Gulbrantson regarding the incident outside the hospital is denied. Defendants' motion for summary judgment regarding plaintiff's claims for intentional infliction of emotional distress and failure to intervene is granted. Defendants Anderson and Nicosia are terminated as parties. Defendants City of Rockford, and officers Gradke, Brass, and Webster are voluntarily dismissed with prejudice. The court orders the parties to set this case for a settlement conference with Magistrate Judge Iain Johnston within 30 days regarding the remaining claims of excessive force and battery against defendant Gulbrantson for the incident outside the hospital.

## STATEMENT-OPINION

Plaintiff filed his second amended complaint ("complaint") on August 10, 2015, against defendants City of Rockford, Officer Anderson, Officer Gulbrantson, Sgt. Brass, Officer Gradke, Officer H. Webster, and Officer D. Nicosia alleging excessive force against the individual defendants and unconstitutional policies, practices and customs against the City of Rockford. Plaintiff's complaint further alleges common law battery, intentional infliction of emotional distress, and failure to intervene [23]. Defendants have moved for summary judgment on all counts pursuant to Federal Rule of Civil Procedure 56. Defendants' motion, memorandum, and Local Rule 56.1 statement, as well as plaintiff's response, memorandum, response to defendants' Local Rule 56.1 statement, and defendants' reply and reply to plaintiff's statement of additional facts are all before the court. For the reasons stated below, defendants' motion is granted in part and denied in part.

1

Prior to addressing the merits of the defendants' motion, the court takes notice of plaintiff's "motion to dismiss" defendants City of Rockford, and officers Gradke, Brass, and Webster, included in his response to defendants' motion for summary judgment. *See* [80]. After a defendant has served a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). In this stage of the proceedings, a court may dismiss parties with prejudice after taking into account the following: (1) the defendants' effort and expense of preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation for the need to take a dismissal; and (4) whether the defendants have filed a motion for summary judgment. *Ratkovich By and Through Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991). Plaintiff did not provide any explanation for the need to dismiss these defendants and did not move for such dismissal until defendants filed their motion for summary judgment. Taking these factors under consideration, pursuant to FED. R. CIV. P. 41(a)(2), the court finds it appropriate to dismiss defendants City of Rockford, and officers Gradke, Brass, and Webster with prejudice. The remaining defendants are officers Gulbrantson, Anderson and Nicosia.

### A. FACTUAL BACKGROUND

As an initial matter, Local Rule 56.1(b)(3)(B) provides that the opposing party is required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Plaintiff disputes, in part or whole, 19 of defendants' 60 material facts. In some of these disputes, plaintiff notes citations to the record that fail to actually dispute defendants' facts. Additionally, plaintiff's objections to defendants' "use of inconsistent affidavits" are equally inaccurate. While the court views the record in the light most favorable to the plaintiff (the non-movant), *Heath v. Indianapolis Fire Dept.*, 889 F.3d. 872, 873-74(7th Cir. 2018), "[w]hen a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Specifically, plaintiff has denied and objected to paragraphs 10 through 16 of defendants' Rule 56.1 statement of facts which details officer Anderson's identification and pursuit of plaintiff. Plaintiff objects to defendants' use of officer Anderson's affidavit as inconsistent with her testimony. After a close review of the record, the court concludes that officer Anderson's affidavit is not inconsistent with her testimony, but adds detail to her testimony. The additions and clarifications contained in officer Anderson's affidavit are modest and permissible. *See Quinlan v. Elysian Hotel Co., LLC*, 916 F.Supp.2d 843, 849-50 (N.D. Ill. Jan. 4, 2013).

The court summarizes the facts as follows. On April 4, 2014, at approximately 3:06 p.m., officers Anderson and Gulbrantson were dispatched to a residence on Crampton Court in Rockford in response to domestic trouble including a possible residential burglary. [76] at ¶ 8. The investigation revealed that plaintiff's mother observed plaintiff exiting a back window of her home carrying a television set. Plaintiff's mother advised dispatch of her son's description and stated she saw him walking southbound toward a nearby church. *Id.* at ¶ 9. On her way to

2

Crampton Court, officer Anderson searched her in-car computer for a picture of plaintiff from the Winnebago County Jail website. She located a recent picture of him as well as information that plaintiff had an outstanding arrest warrant for contempt of court. The warrant described plaintiff as armed and dangerous. *Id*. at ¶ 10. As officer Anderson drove through the area, she spotted a man that matched plaintiff's description. *Id*. at ¶ 11-12. Officer Anderson followed plaintiff both by car and on foot in an attempt to make contact with him. She noticed plaintiff was carrying a black bag containing, what appeared to be, a small television or computer screen. *Id*. at ¶ 13-15. After officer Anderson called out plaintiff's name, he looked at her, turned away and ran. Officer Anderson announced plaintiff's general location over the police radio as she continued in pursuit. *Id*. at ¶ 16. Based on officer Anderson's announcements, officer Gulbrantson made visual contact with plaintiff as well. *Id*. at ¶ 18. Officers Anderson and Gulbrantson both continued to pursue plaintiff on foot through neighborhoods. *Id*. at ¶ 18-22. Officer Anderson caught up to plaintiff at the southeast entrance of Rockford First Church. *Id*. at ¶ 22. Officer Gulbrantson arrived at the church after officer Anderson, noticed plaintiff was carrying a bag, and did not know what was in it or whether it contained a weapon. He feared plaintiff could use the bag as a weapon. The officers approached plaintiff, forming a triangle shape. *Id*. at ¶ 24. At this point, the parties' accounts differ to some degree.

    1.    **Defendants' factual account**

According to defendants, plaintiff stopped running, turned around, and made eye contact with officer Anderson. *Id*. at ¶ 23. Officer Anderson ordered plaintiff to the ground but he did not comply. *Id*. She repeated her commands, yet plaintiff did not comply and continued to hold the bag in his hands. *Id*. As the warrant for plaintiff's arrest indicated he may be armed and dangerous, officer Anderson was in fear plaintiff would use the bag or its contents as a weapon. *Id*. Plaintiff was almost a foot taller than officer Anderson and was almost double her body weight. *Id*. Officer Gulbrantson arrived at the scene and drew his duty pistol. *Id*. at ¶ 25. Recalling that the arrest warrant indicated plaintiff may be armed and dangerous, officer Gulbrantson kept his duty pistol pointed at plaintiff as he approached him. *Id.* at ¶ 26. Plaintiff did not comply with officer Gulbrantson's repeated commands to go to the ground. *Id*. Officer Gulbrantson holstered his duty pistol once he came close enough to plaintiff for a physical confrontation. *Id*. at ¶ 27. When officer Gulbrantson was within 10 feet of plaintiff, he could see plaintiff's hands still holding the bag. *Id*. He continued to order plaintiff to the ground and plaintiff continued to refuse to comply. *Id*. Officer Gulbrantson attempted a leg sweep which plaintiff blocked with his bag, causing an open cut to officer Gulbrantson's shin. *Id*. at ¶ 28. Officer Anderson then deployed OC spray at plaintiff. *Id*. at ¶ 29. She could see that some of the spray got into plaintiff's eyes, however he did not respond, did not fall to the ground, and did not comply with commands to go to the ground. *Id*. Eventually, both officers were able to push plaintiff to the ground where he landed on his hands and knees. *Id*. at ¶ 30. Plaintiff had his hands under his body, refusing to put them behind his back. *Id*. at ¶ 31. To gain compliance, officer Gulbrantson delivered two to three palm heel stuns to the right side of plaintiff's face. *Id*. These stuns were not effective in obtaining plaintiff's compliance. *Id*. Officer Gulbrantson then delivered two or three sideway blows. *Id*. at ¶ 32. Plaintiff physically resisted officer Anderson's efforts to move his arms around to his back. *Id*. Officer Anderson then slapped

3

plaintiff on the left side of his head to stun him long enough to secure his hands behind his back. *Id.* at ¶ 33. Plaintiff was then secured in handcuffs. *Id.*

Plaintiff requested medical attention at the scene. *Id.* at ¶ 34. Plaintiff was transported to OSF Saint Anthony Medical Center for treatment. *Id.* at ¶ 38. Prior to plaintiff's release, officer Gulbrantson took over guard duty of plaintiff at the hospital and plaintiff was medically cleared for transport to the jail. *Id.* at ¶ 41. Transport officers Webster and Nicosia arrived at the hospital and, with officer Gulbrantson, escorted plaintiff out of the hospital and outside to the transport van. *Id.* at ¶ 42. Once outside, plaintiff turned and spat on officer Gulbrantson. *Id.* at ¶ 43. Officer Nicosia pulled plaintiff away from officer Gulbrantson, they both lost their balance and went to the ground. *Id.* at ¶ 43. Once on the ground, plaintiff wriggled and squirmed his head trying to release himself from officer Nicosia. *Id.* Plaintiff was then loaded into the van and transported to the jail. *Id.* at ¶ 44.

### 2. Plaintiff's factual account

The court details plaintiff's factual account to the extent it differs from defendants' account.

As the officers approached plaintiff in the church parking lot, officer Anderson directed plaintiff to stop. He stopped and stood, facing officer Gulbrantson, with the bag still in his hand. Plaintiff's hands were "plain as day." [76-1] at pp. 62, 69, 72. Once officer Gulbrantson was approximately 20 feet away, he walked up to plaintiff, drew his weapon and said, "I should shoot you in your fucking face." *Id.* With officer Gulbrantson's weapon at plaintiff's forehead, officer Anderson reached toward plaintiff's face with her arm outstretched. *Id.* at p. 63. Plaintiff saw something come toward his face, he turned his head and was hit with OC spray. *Id.* Plaintiff then felt officer Gulbrantson kick his right leg and he went down to the ground on his stomach. *Id.* at pp. 63, 77. At this point, plaintiff's arms were "pinned," he was "incapacitated," and felt multiple blows to the right side of his face. *Id.* at pp. 63, 82. At this point, plaintiff was cuffed and sat up "Indian style" on the ground while officer Gulbrantson pushed his knees into plaintiff's back, pushing him forward. *Id.* at p. 64. Plaintiff testified he "posed no threat" to the officers. *Id.* at p. 78.

Shortly after, other officers arrived at the scene and plaintiff requested medical attention. *Id.* at p. 90. Within approximately five or six minutes, an ambulance arrived and took plaintiff to OSF Saint Anthony Medical Center. *Id.* at pp. 90, 93. When plaintiff was released from the emergency department of the hospital, officers Nicosia and Webster arrived to transport him to the jail. *Id.* at p. 103. Plaintiff, handcuffed and leg shackled, walked down the hospital hallway toward the exit with officers Nicosia, Webster and Gulbrantson. *Id.* at p. 105. Once outside next to the transport van, plaintiff told officer Gulbrantson to "fuck himself." *Id.* at p. 107. At that point, according to plaintiff's deposition testimony, officer Gulbrantson immediately grabbed plaintiff, slammed him down, and ground his head back and forth on the concrete. *Id.* One of the officers retrieved a "spit sock" and held it near plaintiff's face as the other officers lifted

4

plaintiff up and put him in the transport van. *Id*. at pp. 109, 114. Plaintiff was then brought to the Winnebago County Jail. *Id*. at p. 116.

### 3. Criminal charges against plaintiff and guilty plea

On December 4, 2015, the Winnebago County State's Attorney filed a two-count amended information, charging plaintiff with Attempt Burglary, a Class 3 felony in violation of Illinois state statute 720 ILCS 5/19-1(a), and Resisting a Peace Officer, a Class A misdemeanor in violation of Illinois state statute 720 ILCS 5/31-1(a). Also on December 4, 2015, plaintiff pleaded guilty to both Attempt Burglary and Resisting a Peace Officer. As to the factual basis for his plea to Resisting a Peace Officer, plaintiff agreed to, among other facts, the following:

> On April 4, 2014, Rockford City Police Department officers responded to a burglary at 5845 Crampton Court, Rockford, Illinois. Upon arrival officers observed the defendant, Christian Littrell, at Spring Creek and Mulford Road. Upon seeing the officers, the defendant ran from them. The officers chased the defendant and observed he had something in his hands. Officers Eric Gulbrantson and Rebecca Anderson repeatedly ordered the defendant to the ground. The defendant refused to comply. Officers were eventually able to take the defendant into custody, and the item in the defendant's hands was a television that was taken from Pamela Littrell's home at 5845 Crampton Court. [...] As Officer Gulbrantson was walking the defendant to the squadroll van to be transported to the jail, the defendant threatened Officer Gulbrantson and spit [*sic*] on him.

[76-13] at p. 12-13. *See also* plaintiff's signed plea of guilty at [76-1]. The trial court accepted plaintiff's guilty plea and entered a judgment of conviction.

### B. LEGAL STANDARD

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" supported by citations to materials in the record, including, among other things, depositions, documents, and affidavits. FED. R. CIV. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5

## C. ANALYSIS

Defendants have moved for summary judgment on all counts. They argue plaintiff's excessive force and failure to intervene claims are barred by *Heck v. Humphrey* and by the doctrine of qualified immunity. They further argue plaintiff's state law claims for battery, intentional infliction of emotional distress, and failure to intervene constituting willful and wanton conduct should fail for independent reasons.[1] In response, plaintiff argues the excessive force - the infliction of pepper spray and the blows to his face by the officers, occurred after he committed the act of resisting - his initial flight from the police. He further argues that even if he did spit on officer Gulbrantson outside of the hospital in front of the transport van, that act did not justify the officer's subsequent excessive force. Plaintiff also contends the facts support a finding of tortious battery and intentional infliction of emotional distress. Regarding defendants' qualified immunity defense, plaintiff' simply states using force that is unreasonable is actionable.

The court's opinion will separate out the events which took place in the church parking lot where officers Anderson and Gulbrantson first made contact with plaintiff, and officers Gulbrantson's and Nicosia's contact with plaintiff outside the hospital, and address the parties' arguments accordingly.

### 1. Plaintiff's arrest in church parking lot

#### a. Plaintiff's claims for excessive force barred pursuant to *Heck*

In *Heck v. Humphrey*, the Supreme Court held that a plaintiff seeking damages under 42 U.S.C. § 1983 cannot recover if a judgment in the plaintiff's favor would "necessarily imply the invalidity" of a criminal conviction, unless the underlying conviction or sentence has been reversed on appeal, expunged by executive order, or declared invalid on habeas review. 512 U.S. 477, 486-87 (1994).[2] Here, defendants argue *Heck* is implicated because the factual predicate for plaintiff's excessive force claim is at direct odds with plaintiff's criminal conviction of resisting arrest, a conviction and sentence that has not been invalidated. In analyzing a claim under the lens of *Heck*, courts focus on the facts "and not on the formalistic

---

[1] In their motion, defendants also argue defendants Gradick and Brass should be dismissed because the record reveals no evidence of personal responsibility for plaintiff's allegations, and the City of Rockford should be dismissed because there is no evidence of a *Monell* claim. The court need not address these arguments as defendants Gradick, Brass, and the City of Rockford have been dismissed with prejudice.

[2] The Seventh Circuit has held that *Heck* even forbids civil claims that "would not invalidate [plaintiff's] conviction or result in a new trial, but would cast a shadow over his conviction and allow [him] to argue that he had been determined by a court to have been unjustly convicted but was forbidden to obtain relief on the basis of that finding." *Mack v. City of Chicago*, __ F. Appx. __, 2018 WL 2341747 at *3 (7th Cir. 2018) (citations omitted).

language in the original [criminal] complaint." *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016). The court will first consider plaintiff's excessive force claim as to his first contacts with the defendants - officers Anderson and Gulbrantson - in the parking lot of the church.

Plaintiff argues his claims for excessive force accrued after he committed the criminal act of resisting arrest. He relies on the agreed factual account that when plaintiff first saw officer Anderson, he ran. However, after the agreed facts concerning the foot chase, plaintiff's complaint alleges, among other things, the following facts:

* "Plaintiff then surrendered to police in the area of Rockford First Church."
* "Plaintiff made officers aware that he was unconditionally surrendering to the pursuing officers."
* "Knowing Plaintiff had surrendered..."
* "...after surrendering to Officer Gulbrantson did not pose a threat or danger to anyone."

[76-1] at pp. 201-02.

Likewise, at his deposition, plaintiff denied that he resisted the officers' arrest. He described the officers coming at him as he stood still with his hands "plain as day." He testified he "posed no threat" to the officers. [76-1] at pp. 62, 69, 78. Despite his "unconditional surrender," the defendant officers then pepper-sprayed him, kicked and punched him. *Id*. at p. 202. Defendants contend that plaintiff's argument that he never resisted the officers' attempts to arrest him in the church parking lot directly conflicts with his conviction with resisting arrest.

In Illinois, it is unlawful to "knowingly resist[] or obstruct[] the performance by one known to the person to be a peace officer...of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a). Plaintiff plead guilty to one count of resisting arrest following a statement of facts which included the fact that plaintiff refused to comply with the officers' orders. [76-13] at pp. 12-13. Additionally, plaintiff signed a plea of guilty. [76-12]. Plaintiff's version of events at the time of his guilty plea stand in contrast to his version of events contained in his complaint and his deposition.

As noted above, the court must determine if plaintiff is precluded from bringing this § 1983 claim for excessive force under *Heck v. Humphrey*. "[I]n considering whether *Heck* requires dismissal, [the court] must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [plaintiff's] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). "[T]he plaintiff can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Id.* (citation omitted). The *Heck* rule is intended to prevent a "collateral attack on [a] conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484. The court should find a "clear nexus between the plaintiff's conviction and the alleged wrongful government action before the *Heck* bar applies." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). As a general rule, a

7

plaintiff who has been convicted of resisting arrest is not *per se* barred under *Heck* from maintaining a § 1983 action for excessive force arising out of the same encounter. *Id*. For example, in *VanGilder* (relied on by plaintiff in his memorandum), the Seventh Circuit reversed the district court's grant of summary judgment in favor of the defendant officers, finding that *Heck* did not apply because plaintiff did not collaterally attack his resisting arrest conviction, did not deny that he resisted the defendant officer's orders to comply, or challenge the factual basis presented at his plea hearing. *Id*. *See also McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006) (ambiguously worded complaint could reasonably be interpreted to mean plaintiff did not deny his assaultive and obstructive conduct; thus, no *Heck* implication); *Hardrick v. City of Bolingbrook*, 522 F.3d 758 (7th Cir. 2008) (court agreed plaintiff drew a distinction, for purposes of avoiding a *Heck* bar, between his resisting arrest before being placed in handcuffs and at another point when he was "peaceably waiting to be handcuffed"); *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008) (*Heck* does not prevent § 1983 plaintiff from introducing evidence of events occurring after the events that were the subject of the prior adjudication); *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010) (plaintiff should be allowed to proceed on his § 1983 excessive force claim that officers severely beat him after he was reduced to custody - but not strictly on a claim that he did not resist arrest (consistent with his plea)). As noted by the *Evans* court, "a plaintiff is master of his claims and can, if he insists, stick to a position that forecloses relief." *Id*. at 364.

In *Tolliver v. City of Chicago*, plaintiff brought claims of excessive use of force against arresting officers. 820 F.3d 237 (7th Cir. 2016). The Seventh Circuit upheld the district court's finding that plaintiff's claims were barred under *Heck*. *Id*. at 239. There, plaintiff asserted the defendant officers shot him at a time when he posed no danger or threat to the officers. *Id*. at 240. Plaintiff plead guilty to aggravated battery to a police officer, admitting that the car he was driving struck one of the officers, causing injury. *Id*. at 241. Under plaintiff's § 1983 excessive force theory, the officers began using excessive force against him before and while the car began to move toward the officer. *Id*. The court held that plaintiff's version of the shooting (the claim of excessive force) implied the invalidity of his conviction and, therefore, his civil claims were barred by *Heck*. *Id*. at 242-43. "That is, if the finder of fact were to accept his version of the event, the officers [used excessive force against plaintiff] as he sat impassively in his car, posing no threat to the officers." *Id*. at 243. Likewise, in *Viramontes*, plaintiff claimed in his deposition that he never tried to hit the police officer - a claim that directly contradicted his conviction. *Viramontes*, 840 F.3d at 429. There, the Seventh Circuit held "[a] subsequent excessive-force claim may...imply the invalidity of a conviction if the plaintiff attempts to testify in a way that contradicts the conviction's factual basis." *Id*. at 427.

Such is the case here. In his plea agreement, plaintiff admitted to resisting the defendant officers' arrest by failing to comply with their commands to get down on the ground when the officers first made contact with him in the church parking lot. However, in his complaint, plaintiff explicitly takes the position that he surrendered to the officers' commands. Additionally, at his deposition, plaintiff denied resisting the arrest and stated he "posed no threat" to the officers. *See Moore v. Mahone*, 652 F.3d 722, 724 (7th Cir. 2011) (drawing the distinction between a plaintiff being "agnostic" about whether he had engaged in the misconduct and "totally and explicitly" denying it). Consistent with *Heck*, plaintiff's factual basis for his

8

civil suit regarding his actions in the church parking lot necessarily implies the invalidity of his criminal conviction for resisting arrest. Regarding officers' use of force against plaintiff at the scene, the court's assessment concerns "reasonableness." "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 389, 397 (1989). Viewing the facts in the light most favorable to the plaintiff, the court finds the officers' strikes to the plaintiff as well as the employment of pepper spray is a reasonable response to plaintiff's resisting. *Dodd v. Corbett*, 154 F. Appx. 497 (7th Cir. 2005) (police officers justified in hitting, kicking and kneeing suspect in response to suspect's refusal to show his hands and submit to arrest). Moreover, "pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury." *Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011). For these reasons, the court grants defendants' motion for summary judgment as to plaintiff's claim for excessive use of force by the officers during his arrest in the church parking lot.

### b. Plaintiff's claim for failure to intervene barred pursuant to *Heck*

The court agrees with defendants that because *Heck* bars plaintiff's claim for excessive force as to the incident in the church parking lot, plaintiff's claim for failure to intervene cannot stand. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Because the court has found no constitutional violation (based on *Heck*) for excessive force in the church parking lot, the court likewise grants defendants' motion for summary judgment as to plaintiff's claim for failure to intervene as to that incident.

### c. Plaintiff's state law claims barred pursuant to *Heck*

Additionally, plaintiff's state law claims of battery, intentional infliction of emotional distress, and failure to intervene constituting willful and wanton conduct (as applied to the church parking lot incident) are dismissed because Illinois has adopted the rule of *Heck* for claims arising under Illinois law. *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102 (Ill.App. 2011). *See also Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803-04 (7th Cir. 2013) (Seventh Circuit acknowledging that Illinois has adopted the rule in *Heck*).[3]

## 2. Incident outside the hospital

### a. Plaintiff's claims for excessive force against officer Gulbrantson are not barred pursuant to *Heck*

---

[3] Because the court has granted defendants' motion for summary judgment regarding plaintiff's claims of excessive force in the church parking lot, the court need not address defendants' alternative argument that they are entitled to dismissal on grounds of qualified immunity for that incident.

Unlike plaintiff's encounter with the defendant officers in the church parking lot where the officers attempted to place plaintiff under arrest, the encounter between plaintiff and the defendant officers outside of the emergency department of the hospital does not, in the court's view, fall within the scope of *Heck*. As set forth above, the facts reveal officers Gulbrantson, Nicosia, and Webster escorted plaintiff out of the hospital emergency department and to the transport van. According to defendants, once outside, plaintiff spat on officer Gulbrantson. In response to this, officer Nicosia pulled plaintiff's arm and both he and plaintiff fell to the ground. Officer Nicosia then called for his partner, officer Webster, to get the "spit sock." According to officer Nicosia at his deposition, as he was holding plaintiff's head to the ground, waiting for the spit sock, plaintiff continued to wiggle and squirm in an attempt to free himself. The officers were then able to put the spit sock on plaintiff and get him in the van. According to plaintiff's deposition testimony, officer Gulbrantson, unprovoked by plaintiff, slammed him to the ground in front of the transport van and scraped his head against the concrete. Examining all of these facts, the only possible defendant who could have caused injury to plaintiff is officer Gulbrantson. Therefore, the court will analyze plaintiff's injury resulting from the incident outside the hospital as against officer Gulbrantson.

The court's review of the record reveals these facts do not imply the invalidity of plaintiff's underlying conviction for resisting arrest, as required by *Heck*. Plaintiff was placed under arrest in the church parking lot. There, he actively resisted and, as set forth above, denied that resistance in both his complaint and his deposition testimony, despite the factual basis for his plea. Once at the hospital and at the transport van, plaintiff was already under arrest and in police custody. Only a claim that 'necessarily' implies the invalidity of a conviction...comes within the scope of *Heck*. *See Nelson v. Campbell*, 541 U.S. 637, 647 (stressing the importance of 'necessarily' in stating the rule of *Heck*)." *Gilbert*, 512 F.3d at 902. While the state included the spitting incident in its factual basis for plaintiff's plea of guilty to resisting arrest, it strikes the court as extraneous and not dispositive of a bar under *Heck*, especially considering plaintiff was already under arrest when the plaintiff and defendant officers were at the hospital. As the *Hardrick* court noted "[w]hether a fact-finder would find this scenario plausible is not for [this court] to conclude, but in terms of *Heck*, it is not one that 'necessarily' implies the invalidity of the conviction, and does not bar [plaintiff's] excessive force claim." *Hardrick*, 522 F.3d at 764 (citation omitted).

The court notes here that despite plaintiff's testimony at his deposition in this case that he did *not* spit on officer Gulbrantson outside the hospital, he cannot now contradict his prior admission (in the form of his plea of guilty in criminal court and acceptance of the state's factual basis for the plea) that he did, in fact, spit on the officer. *See Higgins v. Mississippi*, 217 F.3d 951, 955 (7th Cir. 2000) (in summary judgment proceeding, district court was entitled to credit a statement plaintiff made in his prior criminal proceeding, admitting a material fact, and to disregard plaintiff's later contradictory statement - "a party cannot by [deposition] retract damaging admissions without a good explanation"). Therefore, defendants' arguments under *Heck* aside, the court will analyze plaintiff's claims accepting that plaintiff did spit on officer Gulbrantson outside the hospital.

10

### b. Plaintiff may proceed on his excessive force claim against officer Gulbrantson

As discussed above, a claim that a law enforcement officer used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678. "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). When applying this standard, courts are to keep in mind that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, the court finds that officer Gulbrantson was justified in taking plaintiff to the ground in response to plaintiff committing a battery on the officer by spitting on him. However, a question remains as to the reasonableness of the amount of force used against the plaintiff once officer Gulbrantson took him to the ground. As discussed above, plaintiff alleges officer Gulbrantson slammed his head to the concrete and scraped it back and forth, causing significant injury to his head. Based on the totality of the circumstances, there is a dispute over whether "the officer used greater force than was reasonably necessary" to bring plaintiff under control. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). Therefore, the court will allow plaintiff to proceed on his excessive force claim against officer Gulbrantson for the incident outside the hospital. As to that portion of defendants' motion for summary judgment, it is denied.

### c. Plaintiff may proceed on state law battery claim against officer Gulbrantson

Under Illinois law, a battery includes a "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3. Based on the facts in the light most favorable to the plaintiff, officer Gulbrantson threw plaintiff to the ground in front of the transport van and scraped his head against the concrete. This is enough for a colorable claim of battery. However, the Illinois Local Governmental and Governmental Employees Tort Immunity Act shields public officials (including police officers) from liability for actions committed "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he acted with "actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Breck v. Cortez*, 141 Ill. App. 3d 351, 360 (Ill. App. 1986). Whether an officer acted in such a fashion is normally a question to be determined by a jury. *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008).

Like plaintiff's claim for excessive force, based on the facts in this record a jury might conclude that officer Gulbrantson's taking of plaintiff to the ground "was an intentional and calculated display of force." *Id.* Therefore, plaintiff may proceed on his battery claim for the actions outside the hospital.

### d. The individual defendant officers are not entitled to qualified immunity

Defendants argue in the alternative that they are entitled to qualified immunity for their actions. "In determining whether a defendant is entitled to qualified immunity, [the court must] undertake a two-part analysis, asking: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of its alleged violation." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016) *citing Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005).

Taking the facts in the light most favorable to plaintiff, a fact-finder could reasonably conclude that officer Gulbrantson violated plaintiff's Fourth Amendment rights by using excessive force in response to plaintiff spitting. At the time of plaintiff's arrest, "it was clearly established that an officer may not use excessive force against an individual during an arrest. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). It was also clearly established that using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Alicea v. Thomas*, 815 F.3d 283, 291-92 (7th Cir. 2016). As noted above, there is a material dispute over how much force the officer invoked. "Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity." *Id.* at 292 (citations omitted). Defendants' motion for summary judgment on the basis of qualified immunity as to the defendant officers' actions outside the hospital is denied.

### e. Plaintiff may not proceed on his state law intentional infliction of emotional distress claim

Plaintiff's complaint also brings a state law claim for intentional infliction of emotional distress against the individual defendant officers alleging their actions were "extreme, outrageous and caused and continue to cause Plaintiff to suffer severe pain and emotional distress." In Illinois, a plaintiff must satisfy three requirements for a showing of intentional infliction of emotional distress: "[f]irst, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Cairel v. Alderden,* 821 F.3d 823, 835 (7th Cir. 2016). Courts have held that emotional distress must be

severe. Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (quotations and citations omitted). While police officers are entitled to perform their law enforcement responsibilities assertively, Illinois courts consider other factors to determine whether the conduct is objectively extreme and outrageous. They "examine the degree of power or authority the defendant holds over the plaintiff...[and] consider whether the defendant knew the plaintiff was particularly susceptible to emotion distress...[and] whether the defendant reasonably believed that his objective was legitimate." *Cairel*, 821 F.3d at 835-36.

At his deposition, plaintiff testified to experiencing mental and emotional difficulties stemming from his contact with the defendant officers. The court does not find this evidence can overcome the stringent requirements of a state law claim for intentional infliction of emotional distress. The court finds plaintiff has failed to present enough facts to sustain this state law claim; therefore defendants' motion for summary judgment regarding plaintiff's claims for intentional infliction of emotional distress is granted.

### f.    Officer Nicosia is dismissed as a defendant

As noted above, in his deposition plaintiff testified officer Gulbrantson threw him to the ground outside the hospital and scraped his head on the concrete, causing injury. He does not testify that officer Nicosia inflicted any injury on him, nor does his complaint implicate officer Nicosia in any excessive force or battery claim. The only claim the court can glean against officer Nicosia is a claim for failure to intervene during officer Gulbrantson's contact with him outside the hospital. Plaintiff's claim for failure to intervene against officer Nicosia cannot survive.

An officer is liable under § 1983 for failure to intervene to prevent other law enforcement officers from infringing upon a citizen's constitutional rights if the officer had reason to know "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement officer, *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). According to plaintiff's testimony, officer Gulbrantson "immediately grabbed" him and "slammed...[his] head on the concrete" and "started grinding it back and forth." As described by plaintiff, it appears this incident took place in a matter of seconds. The court finds that even if plaintiff is able to show that excessive force was being used against him or that any constitutional violation had been committed by the police, officer Nicosia did not have a "realistic opportunity" to intervene to prevent the alleged harm from happening to plaintiff. *See also Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014) (officer not liable for failing to intervene when another officer jumped over a

13

fence and struck the suspect in the head). Here, as in *Miller*, the officers "did not have time to confer or plan any sort of use of force." *Id*. at 827. Because the court finds that officer Nicosia cannot be held liable for failure to intervene, and that plaintiff has not properly presented any other claims against him, defendants' motion for summary judgment as to officer Nicosia is granted. Officer Nicosia is dismissed from this lawsuit with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment [74] is granted in part and denied in part. Defendants' motion for summary judgment as to all of plaintiff's claims regarding the incident in the church parking lot against defendants Gulbrantson and Anderson is granted. These claims are dismissed without prejudice because plaintiff may re-file these claims (under a new case number) in the event he ever succeeds in overturning his conviction. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995). Defendants' motion for summary judgment as to plaintiff's claims for excessive force and battery against defendant Gulbrantson regarding the incident outside the hospital is denied. However, defendants' motion for summary judgment regarding plaintiff's claims for intentional infliction of emotional distress and failure to intervene is granted. Defendants Anderson and Nicosia are terminated as parties. Defendants City of Rockford, and officers Gradke, Brass, and Webster are voluntarily dismissed with prejudice. The court orders the parties to set this case for a settlement conference with Magistrate Judge Iain Johnston within 30 days regarding the remaining claims of excessive force and battery against defendant Gulbrantson for the incident outside the hospital.

Date: 06/12/2018  ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)

14